United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 14, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-40134
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROY SALINAS,

Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:04-CR-508-2
--------------------

Before REAVLEY, JOLLY and OWEN, Circuit Judges.

PER CURIAM:[*]

A jury convicted Roy Salinas of conspiracy and possession
with intent to distribute 368 kilograms of marijuana.  Salinas
was sentenced to 120 months in prison and an eight-year term of
supervised release.

In his sole issue on appeal, Salinas argues that there was
insufficient evidence to support the jury's verdict.  The crux of
Salinas's argument is that there is a logical explanation for
seemingly incriminating facts and that there was evidence that
others could have been the culprits.  "This argument ignores the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

standard of appellate review; the Government is not required to present enough evidence to exclude every hypothesis of innocence." United States v. Jones 133 F.3d 358, 362 (5th Cir. 1998) (internal quotation marks and citation omitted).

Viewed in the light most favorable to the Government, the evidence adduced at trial was as follows. See Jones, 133 F.3d at 362. Salinas drove a red Freightliner truck for Lionel Gutierrez (Gutierrez). On September 3, 2004, Salinas called Elam Trucking Company, Inc. (ETC) to state that he was ready to accept a long-haul driving job. ETC assigned Salinas to drive to Indiana with a load of flour from Azteca Mills in Texas. Someone other than Salinas picked up the trailer full of flour from Azteca Mills. Salinas, however, made several cellular telephone calls to Catalino Gutierrez (Catalino) on the 3rd of September. Salinas told officers that Catalino drove a gray Ford Mustang.

On the evening of September 3rd, Heriberto Huerta received a call from a man he identified only as "Chino." Chino asked Huerta to drive a load of drugs from Huerta's home to Houston. Huerta agreed and later that evening, Chino and another unknown man arrived at Huerta's house with the red Freightliner and the trailer full of flour and marijuana. Although Chino usually drove a gray Ford Mustang, he and his companion were in a dark blue Buick when they arrived at Huerta's house. Huerta, who did not possess a commercial driver's license, was told that Chino's

companion, who was driving the blue Buick, would pick up the person who would drive the truck from Houston.

Huerta was detained at the checkpoint when drug-sniffing dogs alerted on the red Freightliner. Approximately nine minutes after Huerta pulled into the checkpoint, the dark blue Buick arrived at the checkpoint. Salinas was a passenger in the Buick, and his brother Rudy Salinas (Rudy) was the driver. Salinas claimed ownership of the vehicle. The Buick was also detained based on the canine's alert, and a homemade marijuana pipe was found in the Buick. Although there was much commotion surrounding the search of the red Freightliner, which Salinas regularly drove, a mere 35 feet away from Salinas and Rudy, neither man looked over in that direction.

Officers found a notebook bearing the names of Salinas and his wife, as well as clothing matching the style and size of those worn by Salinas, in the cab of the freightliner. Additionally, Salinas was found to be in possession of a commercial driver's license. Further, the broken cargo seal that had been placed on the trailer at Azteca Mills was found in the trunk of the Buick. Finally, Rudy placed a call to Catalino while he and Salinas were still detained at the checkpoint.

Although the evidence against Salinas was circumstantial, the development and collocation of circumstances was sufficient to prove a conspiracy. See United States v. Medina, 161 F.3d 867, 872 (5th Cir. 1998); United States v. Gonzales, 79 F.3d 413,

423 (5th Cir. 1996).  Salinas gave several inconsistent statements to the officers investigating the case.  The jury was free to reject Salinas's theory of defense that there was an innocent explanation for everything that happened.  Given the facts of the case, a reasonable jury could have found that the evidence established Salinas's guilt beyond a reasonable doubt on both the conspiracy and the possession counts.  See United States v. Jaramillo, 42 F.3d 920. 922-23 (5th Cir. 1995).

AFFIRMED.